IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. _____

MANUEL R. CABRERA,                      )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )
                                        )
HAIMS MOTORS, INC.,                     )
                                        )
            Defendant.                  )
                                        )

## COMPLAINT

Plaintiff, Manuel R. Cabrera, alleges violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") §§ 501.203, 501.976, the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"), and the Truth in Lending Act 15 U.S.C. § 1601 *et seq.* ("TILA") against Defendant, Haims Motors, Inc., for deceptive and illegal debt collection practices.

## PARTIES

1. Plaintiff is a natural person and a resident of Palm Beach County, Florida.

2. Defendant is a Florida for-profit corporation with its principal place of business at 2840 North State Road 7, Hollywood, FL 33021.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court arises under TILA, a federal statute.

4. Venue is proper because the alleged acts and transactions complained of occurred here and the Defendant transacts and/or conducts business here.

## FACTUAL ALLEGATIONS

5. In 2017, Plaintiff visited the Defendant's website looking to purchase a used car.

6. On the Defendant's website, Plaintiff found a used 2015 Infiniti Q50 ("Infiniti") available for a total purchase price of $27,977.00. (VIN No.: JN1BV7APXFM346172).

7. Among other things, the advertisement for the Infiniti indicated that Defendant performed a full inspection on the Infiniti and that it had working fog lights.

8. Defendant's website also states: "Our full service garages thoroughly inspect and service each new arrival. They are sent to our detail departments to be meticulously cleaned."

9. On or about February 18, 2017, Plaintiff visited Defendant's dealership to purchase that Infiniti.

10. During the visit, Plaintiff asked the Defendant's salesman if the Infiniti had ever incurred any damage or if it was involved in any accidents. The salesman told Plaintiff that he had nothing to worry about because the Infiniti had no damage and had never been in an accident.

11. Based on the salesman's representations, and Defendant's advertisements, Plaintiff purchased and financed the Infiniti under a retail installment sale contract ("RISC"). *See* Exhibit "A."

12. Defendant prepared the RISC agreement, which contains the Federal Truth in Lending statement. The RISC agreement provided: (1) a 3.98% annual percentage rate; (2) a $3,060.51 finance charge; and (3) an amount financed of $24,551.49.

13. The "Total Sale Price" of the Infiniti was $32,912.00, which included Plaintiff's down payment of $5,300.00.

14. Defendant calculated the down payment based on a $4,000.00 cash payment and a gross trade-in allowance of $12,000.00 for the Plaintiff's trade-in, which was a used 2012 Infiniti G37 ("Trade-In").

15. During negotiations, Defendant's salesman communicated with Capital One and confirmed that Plaintiff owed $10,312.00 on the Trade-In.

16. Defendant illegally calculated the down payment on the RISC agreement because Defendant indicated that it would make a $10,700.00 pay-off to Capital One (instead of $10,312.00).

17. Because Capital One provided the amount required to pay-off the Trade-In, Defendant knew it would not pay $10,700.00 to Capital One, which resulted in a $388.00 illegal profit to Defendant.

18. Defendant then used the illegal $5,300.00 figure to calculate the "Total Sale Price" of the Infiniti.

19. Defendant violated TILA because it failed to disclose the true Total Sale Price of the Infiniti.

20. Defendant assigned and/or sold the RISC agreement to JP Morgan Chase Bank NA for financing.

21. Before visiting the Defendant's dealership, Plaintiff received pre-approved financing at 3.14%, which Plaintiff provided to the salesman.

22. The salesman advised Plaintiff that if he wanted to use his own financing, Defendant would charge him a $750.00 "Draft Fee." Plaintiff reluctantly agreed to finance the purchase through Defendant instead of using his own financing.

23. The $750.00 Draft Fee is fictitious and was used to coerce Plaintiff into financing the purchase with JP Morgan Chase Bank because Defendant received a kickback from JP Morgan Chase Bank NA for generating the financing deal with Plaintiff, and Defendant would

not receive that kickback if Plaintiff used his own financing. This caused Plaintiff to incur a higher finance charge to purchase the Infiniti.

24. Defendant also drafted and had Plaintiff sign a Retail Purchase Agreement ("RPA") to purchase the Infiniti. *See* Exhibit "B."

25. On the RPA, Defendant charged Plaintiff a $699.00 "Dealer Fee/Loan Processing Fee" and a $47.95 "DMV E-FILE" fee (collectively "Fees"). *Id.*

26. Defendant's salesman told Plaintiff that he must pay the Fees to purchase the Infiniti.

27. Defendant violated the FDUTPA because it did not include the Fees in the price it advertised for the Infiniti. Fla. Stat. § 501.976(16) ("Advertise the price of a vehicle unless the vehicle is identified by year, make, model, and a commonly accepted trade, brand, or style name. The advertised price must include all fees or charges that the customer must pay, including freight or destination charge, dealer preparation charge, and charges for undercoating or rustproofing….")

28. On the RPA, Defendant also failed to disclose that the $47.95 DMV E-File was costs and profit to Defendant for preparing documents related to the sale.

29. Instead, Defendant represented the $47.95 DMV E-File fee as a Florida required fee, which it is not, and added it to the cash price of the Infiniti.

30. In reality, the DMV E-file fee is a hidden profit center for the Defendant because it retains a large portion of it.

31. Defendant violated the FDUTPA and FCCPA because it added the DMV E-File fee to the cash price of the vehicle without fully and consciously disclosing it to Plaintiff.[1]

---

[1] Fla. Stat. § 501.976(11) ("Add to the cash price of a vehicle as defined in s. 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. All fees or charges permitted to

4

32. Once Plaintiff arrived home, he attempted to turn on the Infiniti's fog lights, but they did not illuminate. Upon inspection, Plaintiff discovered that the Infiniti had no fog light assembly or fog lights.

33. Concerned, on February 20, 2017, Plaintiff took the Infiniti to Shumacher Infiniti collision center to have it inspected.

34. Shumacher discovered: (1) paint overspray, which indicates the Infiniti received painting after repair; (2) a zip tie holding the bumper to the Infiniti; and (3) missing pieces of plastic undercarriage that were previously ripped off.

35. Shumacher estimated it would cost Plaintiff over $5,000.00 to repair the Infiniti to the condition as it was advertised by Defendant.

36. Defendant performed no inspection of the Infiniti as advertised because it would have discovered these issues.

37. Defendant falsely represented the condition of the Infiniti to Plaintiff during its sale without knowing the Infiniti's true condition.

### COUNT I AS TO DEFENDANT'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT §§ 501.203(3), 501.204(1); and 501.976(4), (11), (16), and (18)

38. Plaintiff is a "consumer" defined under Florida Statute §501.203(7).

39. Plaintiff is also a "customer" as defined under Florida Statute § 501.975(1).

40. Defendant is a "dealer" as defined under Florida Statute § 501.976(2).

41. Defendant engaged in "trade or commerce" as defined by Fla. Stat. Ann. § 501.203(8) when it sold the Infiniti to Plaintiff.

---

be added to the cash price by rule 69V-50.001, Florida Administrative Code, must be fully disclosed to customers in all binding contracts concerning the vehicle's selling price."); Fla. Stat. § 559.72(9) ("In collecting consumer debts, no person shall:… Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.")

42. Defendant generally violated the FDUTPA under Fla. Stat. Ann. §§ 501.204 when it engaged in unfair and deceptive practices in trade or commerce during the sale of the Infiniti, including but not limited to when it deceptively advertised the total sale price of the Infiniti; failed to properly disclose certain fees charged to Plaintiff; illegally calculated Plaintiff's down payment; charged Plaintiff illegal fees; and represented the condition of the Infiniti to be something it was not.

43. Defendant also committed a *per se* violation of FDUTPA when it violated the FDUTPA §§ 501.976(4), (11), (16), and (18); TILA 15 U.S.C. § 1638(a)(8) and Reg. Z § 1026.18(j); and the FCCPA § 559.72(9).

44. As a result of Defendant's FDUTPA violations, Plaintiff suffered substantial damage, including but not limited to out-of-pocket monetary loss and a decrease in the actual value of the vehicle.

**COUNT II AS TO THE DEFENDANT'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

45. Plaintiff is a "consumer" as defined by Florida Statute § 559.55(8) because he is a natural person allegedly obligated to pay a debt for the purchase of a motor vehicle.

46. Defendant is a "person" as defined under the FCCPA because it attempted to collect a consumer debt from Plaintiff.

47. Defendant attempted to collect a "consumer debt" from Plaintiff as defined by Florida Statute § 559.55(6) because Plaintiff was allegedly obligated to pay a debt for personal, family, or household purposes.

48. Defendant attempted to collect and did collect an illegitimate debt and it enforced, claimed, and asserted a known non-existent legal right to a debt when it charged and collected illegal fees from Plaintiff in connection with purchasing the Infiniti. Fla. Stat. § 559.72(9).

6

49. As a result of the Defendant's FCCPA violation, Plaintiff suffered substantial damage, including but not limited to out-of-pocket monetary loss.

### COUNT III AS TO DEFENDANT'S VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601 *et seq.*

50. The transaction between Plaintiff and Defendant was a consumer credit transaction.

51. The TILA disclosure statement issued by Defendant violated the requirements of TILA and Regulation Z.

52. Defendant violated TILA and Regulation Z by failing to clearly and conspicuously disclose the Total Sale Price and by failing to disclose accurately the finance charge, amount financed, and the annual percentage rate.

53. Because of the Defendant's TILA violations, Plaintiff suffered substantial damage including but not limited to out of pocket monetary loss and loss of a better financing loan.

### RELIEF REQUESTED

WHEREFORE, based on the above stated in this Complaint, Plaintiff has been the subject of the Defendant's abusive and unfair practices in violation of the FCCPA, FDUTPA, and TILA. Plaintiff respectfully requests this Honorable Court to enter judgment for the Plaintiff on all counts and the following forms of relief:

a) Actual damages;

b) Statutory damages under the FCCPA, FDUTPA, and TILA;

c) Reasonable attorneys' fees and costs pursuant to the FCCPA, FDUTPA, and TILA;

d) a judgment awarding injunctive relief;

e) That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, is immediately restrained from altering, deleting or destroying any documents or records; and

f) Such other and further relief as the Court may deem just and proper.

g) Plaintiff reserves the right to amend his complaint to add a claim for punitive damages.

h) Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 9, 2017                                   Respectfully submitted,

s/ Darren R. Newhart
Darren R. Newhart, Esq.
Florida Bar No.: 0115546
E-mail: darren@cloorg.com
J. Dennis Card Jr., Esq
Florida Bar No.: 0487473
E-mail:DCard@Consumerlaworg.com
Consumer Law Organization, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132