**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

MANUEL CABRERA,           )
                        )  Case No: 17-CIV-60500-Bloom/Valle
        Plaintiff,    )
v.                    )
                        )
HAIMS MOTORS, INC.,       )
                        )
        Defendant.   )
                        )
                        )

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

I.     INTRODUCTION ................................................................................... 6

II.    PROCEDURAL HISTORY ..................................................................... 6

III.   MEMORANDUM OF LAW ..................................................................... 7

  A.   STANDARD FOR SUMMARY JUDGMENT .................................... 7

  B.   HAIMS VIOLATED TILA AS A MATTER OF LAW ......................... 7

    1.   Haims Motors is a "creditor" duty-bound to comply with TILA's disclosure requirements. ................................................................................... 8

    2.   Haims Motors violated TILA by disclosing an inaccurate "Amount Financed" on the RISC. ..................................................................................... 9

  C.   DEFENDANT VIOLATED FDUTPA AS A MATTER OF LAW. .................... 11

    1.   Defendant engaged in "trade or commerce" when it advertised and sold the Infiniti to Mr. Cabrera. ................................................................................ 12

    2.   Haims Motors violated FDUTPA when it required Mr. Cabrera to pay fees omitted from the Infiniti's advertised price. .......................................... 12

    3.   Even if Haims Motors included the $47.95 "DMV E-FILE" fee in the Infiniti's advertised price—which it didn't—Haims Motors violated FDUTPA because it didn't "fully" disclose the fee. ..................................................................... 13

    4.   Haims Motors violated FDUTPA when it overcharged Mr. Cabrera for titling and registering the Infiniti and never refunded the overage. .............................. 15

  D.   HAIMS VIOLATED THE FCCPA AS A MATTER OF LAW. ..................... 16

    1.   Mr. Cabrera purchased the Infiniti for "personal, family, and household use." .... 17

    3.   Haims Motors violated the FCCPA because it failed to comply with FDUTPA. . 18

    4.   Haims Motors was sued in 2015 for this exact same conduct giving it actual knowledge of its wrongdoing. .......................................................... 20

  E.   MR. CABRERA IS ENTITLED TO SUMMARY JUDGMENT ON HAIMS MOTORS' AFFIRMATIVE DEFENSES. ................................................. 21

### TABLE OF AUTHORITIES

Cases

77 B.R. 524 (Bankr. E.D. Pa. 1987) ................................................................................. 9

*Agrelo v. Affinity Mgmt. Services, LLC*,
  841 F.3d 944 (11th Cir. 2016) ............................................................................. 18, 19

*Alhassid v. Bank of Am., N.A.*,
  14-20484-CIV, 2015 WL 11110557 (S.D. Fla. Nov. 4, 2015) .............................. 13, 14, 15

*Bert Smith Oldsmobile, Inc. v. Franklin*,
  400 So. 2d 1235 (Fla. 2d DCA 1981) ............................................................................. 12

*Bowe v. Pub. Storage, 1:14-CV-21559-UU*,
  2014 WL 12029270 (S.D. Fla. July 2, 2014) ................................................................. 17

*Bragg v. Bill Heard Chevrolet, Inc.*,
  374 F.3d 1060 (11th Cir. 2004) ..................................................................................... 10

*Bryson v. Bank of New York*,
  584 F. Supp. 1306 (S.D.N.Y. 1984) ............................................................................. 10

*Calderon-Garnier v. Rodriguez*,
  578 F.3d 33 (1st Cir. 2009) ............................................................................................. 5

*Chastain v. N.S.S. Acquisition Corp.*,
  08-81260-CIV, 2009 WL 1971621 (S.D. Fla. July 8, 2009) ............................................. 6

*Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*,
  304CV1076J32MCR, 2006 WL 2691528 (M.D. Fla. Sept. 19, 2006) ............................. 11

*Cliff v. Payco Gen. Am. Credits, Inc.*,
  363 F.3d 1113 (11th Cir. 2004) ..................................................................................... 19

*Cook v. Blazer Fin. Services, Inc.*,
  332 So. 2d 677 (Fla. 1st DCA 1976) ............................................................................. 18

*Daniel v. Select Portfolio Servicing, LLC*,
  159 F. Supp. 3d 1333 (S.D. Fla. 2016) ......................................................................... 20

*Democratic Republic of the Congo v. Air Capital Group, LLC*,
  614 Fed. Appx. 460 (11th Cir. 2015) ....................................................................... 10, 11

*Fabricant v. Sears Roebuck*,
  98-1281-CIV, 2002 WL 34477592 (S.D. Fla. Mar. 6, 2002) ........................................... 6

*Garrison v. Caliber Home Loans, Inc.*,
  233 F. Supp. 3d 1282 (M.D. Fla. 2017) ......................................................................... 18

*Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*,
  05-61931CIV, 2006 WL 4579688 (S.D. Fla. Feb. 6, 2006) ....................................... 15, 16

*Haims Motors violated TILA because it disclosed the pay-off amount as an "estimate" when it had the
  correct information when the parties consummated the RISC. See Small v. BOKF, N.A., 13-CV-
  01125-REB-MJW*,
  2014 WL 3906257 (D. Colo. Aug. 7, 2014) ................................................................... 9

*In re Madel,*
  03-32367, 2004 WL 4055247 (Bankr. E.D. Wis. Nov. 8, 2004) ...................................... 9
*In re Mitchell,*
  75 B.R. 593 (Bankr. E.D. Pa. 1987) ................................................................................ 9
*Jeter v. Credit Bureau, Inc.,*
  760 F.2d 1168 (11th Cir. 1985) ..................................................................................... 18
*Latman v. Costa Cruise Lines, N.V.,*
  758 So. 2d 699 (Fla. 3d DCA 2000) ............................................................................. 17
*Leahy-Fernandez v. Bayview Loan Servicing, LLC,*
  159 F. Supp. 3d 1294 (M.D. Fla. 2016) ....................................................................... 20
*LeBlanc v. Unifund CCR Partners,*
  601 F.3d 1185 (11th Cir. 2010) ...............................................................................17, 18
*Lou Bachrodt Chevrolet, Inc. v. Savage,*
  570 So. 2d 306 (Fla. 4th DCA 1990) ........................................................................... 11
*Mize v. Jefferson City Bd. of Educ.,*
  93 F.3d 739 (11th Cir. 1996) .......................................................................................... 6
*Muro v. Hermanos Auto Wholesalers, Inc.,*
  514 F. Supp. 2d 1343 (S.D. Fla. 2007)........................................................................6, 7
*Oppenheim v. I.C. Sys., Inc.,*
  627 F.3d 833 (11th Cir. 2010) ........................................................................................ 5
*Ortega v. Collectors Training Inst. of Illinois, Inc.,*
  09-21744-CIV, 2010 WL 11505559 (S.D. Fla. Mar. 31, 2010)...................................... 20
*Other federal courts have recognized this principle where, as here, a defendant violated the FCCPA based on a defined legal right set out in a separate statute.Brook v. Suncoast Sch., FCU, 8:12-CV-01428-T-33,*
  2012 WL 6059199 (M.D. Fla. Dec. 6, 2012) ................................................................ 19
*Schauer v. Gen. Motors Acceptance Corp.,*
  819 So. 2d 809 (Fla. 4th DCA 2002) ........................................................................... 19
*Shroder v. Suburban Coastal Corp.,*
  550 F. Supp. 377 (S.D. Fla. 1982) ................................................................................. 6
*Steinberg v. Ateeco, Inc., 15-CIV-60973,*
  2015 WL 11181732 (S.D. Fla. Aug. 11, 2015) ............................................................. 11
*Swanson v. Mid Am, Inc.,*
  186 F.R.D. 665 (M.D. Fla. 1999) ................................................................................. 18
*United States v. Baptiste,*
  618 Fed. Appx. 593 (11th Cir. 2015) ........................................................................... 22
*Williams v. Delray Auto Mall, Inc.,*
  916 F. Supp. 2d 1294 (S.D. Fla. 2013)......................................................................... 11
*Wilson v. EverBank, N.A.,*
  77 F. Supp. 3d 1202 (S.D. Fla. 2015) .......................................................................... 10

Statutes

15 U.S.C. §1638(a)(2)(A) ...................................................................................8, 10

15 U.S.C. § 1601 ..............................................................................................5, 6

15 U.S.C. § 1602(f) ................................................................................................ 7

15 U.S.C. § 1602(g) ............................................................................................... 7

15 U.S.C. § 1639(a)(2)(A)(i)-(iii) .......................................................................... 8

15 U.S.C. § 1692k .................................................................................................. 5

15 U.S.C. §§ 1331–32, 1368 ................................................................................. 6

20 U.S.C. §§ 1001 ............................................................................................... 19

Fla. Stat. § 501.202 ............................................................................................. 10

Fla. Stat. § 501.202(2) ........................................................................................ 10

Fla. Stat. § 501.203(3)(c) ............................................................................. 11, 15

Fla. Stat. § 501.203(8) ........................................................................................ 11

Fla. Stat. § 501.976(16) ............................................................................ 12, 13, 20

Fla. Stat. § 501.976(18) ...................................................................................... 14

Fla. Stat. § 520.02(2) .......................................................................................... 16

Fla. Stat. § 559.55(6) .......................................................................................... 18

Fla. Stat. § 559.552 ............................................................................................. 17

Fla. Stat. § 559.72(9) .................................................................................... 17, 21

Fla. Stat. § 559.77(5) .......................................................................................... 17

s 1.01(3), Florida Statutes .................................................................................. 19

Section 320.03(10), F.S ....................................................................................... 15

section 501.976(11), Florida Statutes ................................................................ 14

Rules

Fed. R. Civ. P. 56(c) .............................................................................................. 5

Fed. R. Evid. 404(b) ............................................................................................ 22

Federal Rule of Evidence 403 ............................................................................. 22

Regulations

12 C.F.R. Part 226................................................................................................. 6

12 C.F.R. § 226 ...................................................................................................... 7

12 CFR § 1026.17(c)(2)(i)..................................................................................... 8

Fla. Admin. Code 15C-16.007(2)(d) ................................................................... 15

Fla. Admin. Code 15C-16.012(5) ........................................................................ 15

Fla. Admin. Code 69V-50.001 ............................................................................ 16

Reg. Z § 226.2(a)(13) ............................................................................................ 8

Reg. Z § 1026.2(a)(18) .......................................................................................... 8

## I.      INTRODUCTION

This case is about disclosure. As a used car dealer, Defendant Haims Motors, Inc., must make accurate and truthful disclosures to its customers. Those disclosures are the linchpin for Haims Motors to charge and collect certain fees from those customers. Plaintiff, Manuel R. Cabrera purchased and financed a used car from Haims Motors, and as one of its customers, Mr. Cabrera was entitled to receive accurate and truthful disclosures. Haims Motors never gave Mr. Cabrera those disclosures, and without them, Mr. Cabrera should not have paid certain fees Haims Motors required him to pay.

Mr. Cabrera is entitled to summary judgment under the Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Florida Consumer Collection Practices Act ("FCCPA"), and the Truth in Lending Act ("TILA").

First, FDUTPA required Haims Motors to disclose in its advertised price all fees and charges its customers must pay. Haims Motors didn't. Instead, Haims Motors charged and successfully collected illegitimate fees from Mr. Cabrera that it knowingly excluded from its advertised price, violating FDUTPA and the FCCPA.

Second, FDUTPA required Haims Motors to "fully" disclose to Mr. Cabrera all fees added to the cash price of the vehicle, and if any amount was overcharged, Haims Motors had to refund that amount to Mr. Cabrera. Again Haims Motors did neither, and knowingly charged and retained those fees, violating FDUTPA and the FCCPA.

Last, TILA required Haims Motors to accurately disclose the "amount financed" to Mr. Cabrera for the purchase and financing of his vehicle. Haims Motors did not accurately disclose the "amount financed" because it overstated the down payment it made to satisfy the lien on Mr. Cabrera's trade-in vehicle. The result being that Haims Motors disclosed an inaccurate amount financed, violating TILA.

There is no material dispute of fact that Mr. Cabrera is entitled to summary judgment under the FDUTPA, FCCPA, and TILA.

## II.     PROCEDURAL HISTORY

Mr. Cabrera filed this action on March 9, 2017, alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") §§ 501.203, 501.976, the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"), and the Truth in Lending Act

15 U.S.C. § 1601 *et seq.* ("TILA") against Defendant Haims Motors, Inc. (ECF No. 1). In response, Haims Motors filed its Answer and Affirmative Defenses to Complaint on April 5, 2017. (ECF No. 9). Haims Motors' alleged two affirmative defenses: (i) failure to set forth facts sufficient to state a claim; and (ii) "bona-fide error defense pursuant to 15 U.S.C. § 1692k". (*Id,* pg. 7).

On October 3, 2017, the parties mediated this case but reached no resolution. The parties completed discovery on October 9, 2017. However, Mr. Cabrera moved for sanctions (ECF No. 40) on October 24, 2017, which is pending before the Court, related to certain discovery conduct engaged in by Haims Motors. This motion is being brought before the October 30, 2017, dispositive motion deadline. (ECF No. 13).  Mr. Cabrera is filing a separate statement of undisputed facts that are incorporated herein.

## III.   MEMORANDUM OF LAW

### A.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Calderon-Garnier v. Rodriguez*, 578 F.3d 33, 37 (1st Cir. 2009). If a reasonable jury could return a verdict for the defendant, then a "genuine issue of material fact exists." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836 (11th Cir. 2010) (citations omitted). However, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citations omitted).

### B.   HAIMS VIOLATED TILA AS A MATTER OF LAW

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601 (Congressional findings); *Fabricant v. Sears Roebuck*, 98-1281-CIV, 2002 WL 34477592, at *4 (S.D. Fla. Mar. 6, 2002) ("TILA changed the philosophy in the extension of credit from let the buyer beware to make the seller disclose.") (internal quotations and citations omitted). To that end, TILA "must be construed

liberally in favor of the consumer because it is a remedial statute." *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F. Supp. 2d 1343, 1348 (S.D. Fla. 2007).

TILA, and its implementing regulations, "set forth the timing and content of certain mandatory disclosures regarding finance charges, annual percentage rates of interest, total payment schedule and the like." *Muro*, 514 F. Supp. 2d at 1348; *see* 15 U.S.C. §§ 1331–32, 1368; 12 C.F.R. Part 226 ("Regulation Z"). These "stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold." *Chastain v. N.S.S. Acquisition Corp.*, 08-81260-CIV, 2009 WL 1971621, at *3 (S.D. Fla. July 8, 2009), *aff'd,* 378 Fed. Appx. 983 (11th Cir. 2010) (citations omitted).

TILA is a strict liability statute, and "[o]nce the Court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Shroder v. Suburban Coastal Corp.*, 550 F. Supp. 377, 382 (S.D. Fla. 1982).

1.      *Haims Motors is a "creditor" duty-bound to comply with TILA's disclosure requirements.*

TILA provides that a "creditor" is a person who:

(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.…

15 U.S.C. § 1602(g). Under the Official Commentary to Regulation Z, "auto dealers who arrange for financing with a bank through the use of credit installment contracts are creditors under the TILA." *Muro*, 514 F. Supp. 2d at 1348–49; *see* 12 C.F.R. § 226 Suppl. I, ¶ 2(a)17(I).

The Retail Installment Sales Contract ("RISC") names Haims Motors as the "Seller-Creditor" and Mr. Cabrera the "Buyer." (The RISC is attached as Exhibit "D"). Immediately below it provides: "By signing this contract, you choose to buy the vehicle on credit under the terms on the front and back of this contract[]" and "[y]ou agree to pay the Seller-Creditor." (*Id.*)

After its execution, the RISC required Mr. Cabrera to pay the amount financed and finance charge to Haims Motors, and thus, "the person to whom the debt arising from the consumer credit transaction [was] initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f). Therefore, TILA required Haims Motors to give "clear and conspicuous" disclosures to Mr. Cabrera in connection with the Infiniti's sale and financing.

2.  *Haims Motors violated TILA by disclosing an inaccurate "Amount Financed" on the RISC.*

TILA requires creditors to "clearly and conspicuously" disclose the "amount financed [] which shall be the amount of credit of which the consumer has actual use." 15 U.S.C. §1638(a)(2)(A). The amount financed is calculated as follows:

> **(i)** take the principal amount of the loan or the cash price less downpayment and trade-in;
>
> **(ii)** add any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer, including the cost of any items excluded from the finance charge pursuant to section 1605 of this title; and
>
> **(iii)** subtract any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit.

15 U.S.C. § 1639(a)(2)(A)(i)-(iii). The "down payment" in part one is the "amount, including the value of property used as a trade-in, paid to a seller to reduce the cash price of goods or services purchased in a credit sale transaction." Reg. Z § 1026.2(a)(18). Although, "[d]isclosures required under TILA may be estimated when the exact information is unknown at the time disclosures are made. Information is unknown if it is not reasonably available to the creditor at the time the disclosures are made." 12 CFR § 1026.17(c)(2)(i).

As part of the Infiniti's sale, Mr. Cabrera traded-in a vehicle to Haims Motors who agreed to "pay-off" trade-in vehicle's lien to Capital One. (The Retail Purchase Agreement is attached as Exhibit "C"; Ex. D; Dep. at 100:1-5). On February 18, 2017, the sale date, Haims Motors claimed that the "estimated" pay-off to Capital One for Mr. Cabrera's trade-in vehicle

was $10,700. (Ex. D). However, on the day Mr. Cabrera "consummated"[1] the Infiniti's purchase, the pay-off amount was $10,317 and it was good until February 28, 2017. (The Authorization for Payoff is attached as Exhibit "H"; Dep. at 106:1-5). During deposition, Haims Motors' corporate representative, Gustavo Visquez, testified that Haims Motors' salesman, on February 18, 2017, called Capital One and confirmed the pay-off amount for the trade-in vehicle was $10,317. (Dep. at 107:6-19, 112:6-25, 113:1-113) (Mr. Visquez's deposition transcript ("Dep.") is attached as Exhibit "A").

Haims Motors violated TILA because it disclosed the pay-off amount as an "estimate" when it had the correct information when the parties consummated the RISC. *See Small v. BOKF, N.A.*, 13-CV-01125-REB-MJW, 2014 WL 3906257, at *3–4 (D. Colo. Aug. 7, 2014)) (granting summary judgment to consumer where the APR disclosure was based upon a thirty-day repayment period even though the creditor knew that that the actual repayment period for "fastloan" cash advances was approximately fourteen days; cannot claim the disclosure is an estimate); *In re Madel*, 03-32367, 2004 WL 4055247 (Bankr. E.D. Wis. Nov. 8, 2004)) (TILA claim based upon an estimated TILA disclosure listing $0 for private mortgage insurance when the lender had received a quote of $392 before it created the disclosure form stated a claim); *In re Mitchell*, 75 B.R. 593 (Bankr. E.D. Pa. 1987), *on reconsideration,* 77 B.R. 524 (Bankr. E.D. Pa. 1987), *on reconsideration, In re Mitchell*, 77 B.R. 524 (Bankr. E.D. Pa. 1987)) (TILA violation to give "estimated disclosures" at time of closing when actual figures were known). The result being an inflated "cash price" on the RISC.

Haims Motors then used the inflated "cash price" to calculate the "amount financed" on the RISC. (Dep. at 110:6-25, 111:1-4). It follows that Haims Motors inaccurately disclosed the "amount financed" on the RISC, which Mr. Visquez admitted in deposition (Dep. at 111:25, 112:1-5). And once Mr. Cabrera consummated the RISC, he incurred actual damages because he will pay more interest over the life of the RISC. *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1066 (11th Cir. 2004) (*citing Bryson v. Bank of New York*, 584 F. Supp. 1306 (S.D.N.Y. 1984) ("The point at which the consumer ... commits himself or herself to the purchase of credit, without regard for the degree of commitment of the lender ... [is the point at which] the consumer becomes vulnerable to actual damage from the lender's inadequate or

---

[1] Reg. Z § 226.2(a)(13) (consummation defined as "the time that a consumer become contractually obligated on a credit transaction.").

deceptive disclosures, for at this time he or she can be contractually bound to the terms of the lending contract at the option of the lender.").

There is no dispute that Haims Motors violated TILA because it failed to accurately disclose the "amount financed" on the RISC. 15 U.S.C. § 1638(a)(2)(A); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015) (TILA's fundamental purpose "is to provide borrowers with clear and accurate disclosures of loan terms.").

## C.    DEFENDANT VIOLATED FDUTPA AS A MATTER OF LAW.

FDUTPA is designed "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). FDUTPA's "rules of construction compel courts to interpret the law liberally." *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 Fed. Appx. 460, 469 (11th Cir. 2015) (*citing* Fla. Stat. § 501.202.). That is to construe liberally these policies:

> (1)   To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
>
> (2)   To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.
>
> (3)   To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

*Id.*; *see Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, 304CV1076J32MCR, 2006 WL 2691528, at *3 (M.D. Fla. Sept. 19, 2006) (finding that "[s]ince FDUTPA does not clearly define what constitutes "unfair and deceptive," courts have held that the statute should be construed liberally, and that the concept should be regarded as extremely broad").

To succeed on a FDUTPA claim, a plaintiff must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Steinberg v. Ateeco, Inc.*, 15-CIV-60973, 2015 WL 11181732, at *3 (S.D. Fla. Aug. 11, 2015) (citations omitted). A *per se* violation of FDUPTA occurs when the conduct violates "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts

or practices." *Williams v. Delray Auto Mall, Inc.*, 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013) (*citing* Fla. Stat. § 501.203(3)(c)).

  1. *Defendant engaged in "trade or commerce" when it advertised and sold the Infiniti to Mr. Cabrera.*

FDUTPA defines "trade or commerce" as:

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8).

  Haims Motors engaged in "trade or commerce" when it advertised the Infiniti for sale, arranged financing, and sold it to Plaintiff. (ECF No. 41-5, Deposition of Gustavo Visquez, Defendant's corporate representative, at 87:5-6 ("Dep")); *see Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. 4th DCA 1990); *see also Bert Smith Oldsmobile, Inc. v. Franklin*, 400 So. 2d 1235, 1236 (Fla. 2d DCA 1981). FDUTPA applies to the transaction here because Haims Motors engaged in unfair and deceptive conduct in the course of "trade or commerce."

  2. *Haims Motors violated FDUTPA when it required Mr. Cabrera to pay fees omitted from the Infiniti's advertised price.*

  Haims Motors is a "car dealer" under FDUTPA because it sells hundreds of used cars a month. (Dep. at 11:5; 28:20-22). Under FDUTPA's dealer statute, a car dealer who advertises the price of a vehicle must "include all fees or charges that the customer must pay, including freight or destination charge, dealer preparation charge, and charges for undercoating or rustproofing.…" Fla. Stat. § 501.976(16).

  Haims Motors advertised the Infiniti's cash price on its website. (A copy of the advertisement is attached as Exhibit "B"). Mr. Visquez admitted in deposition that the Infiniti's advertise cash price omitted the $699 "DEALER FEE/LOAN PROCESSING FEE" and the $47.95 "DMV E-FILE" fee, which are fees that every customer must pay. (Dep. at 91:2-10, 92:10-25; Ex. B).

Those "upcharges" were added to the Infiniti's cash price on the Retail Purchase Agreement ("RPA") signed by the parties (Dep. at 92:10-13), and ultimately added to the total purchase price Mr. Cabrera paid for the Inifniti.[2] Stated differently, Haims Motors advertised the Infiniti's price ("bait") knowing it would ("switch") Mr. Cabrera into paying a higher price because the advertised price *did not* include the $699 "DEALER FEE/LOAN PROCESSING FEE" or the $47.95 "DMV E-FILE" fee.

FDUTPA makes clear: a car dealer, like Haims Motors, commits an unfair and deceptive practice when it fails to include all "fees and charges a customer must pay" in a vehicle's advertised price. Fla. Stat. § 501.976(16). Haims Motors violated FDUTPA's dealer statute, which is a *per se* violation of FDUTPA. Haims Motors' violation of FDUTPA caused Mr. Cabrera "actual damages" as the fees were tacked on to the amount he financed and pays every month. *Alhassid v. Bank of Am., N.A.*, 14-20484-CIV, 2015 WL 11110557, at *9 (S.D. Fla. Nov. 4, 2015) ("tacking on unnecessary fees and costs to Plaintiff's account amounts to an unfair or deceptive practice, one which is likely to deceive a reasonable consumer."); *Daniel Bell v. Miami Motorsports, LLC and ZG Financial Services, LLC.,* 23 Fla. L. Weekly Supp. 767a (granting summary judgment to plaintiff holding that Dealer committed *per se* violation of FDUTPA by adding upcharge to advertised cash price of vehicle sold to plaintiff.).

> 3.      *Even if Haims Motors included the $47.95 "DMV E-FILE" fee in the Infiniti's advertised price—which it didn't—Haims Motors violated FDUTPA because it didn't "fully" disclose the fee.*

First, [i]t is an unfair or deceptive act or practice, actionable under the Florida Deceptive and Unfair Trade Practices Act, for a dealer to…:

> [c]harge a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale."

Fla. Stat. § 501.976(18). Mr. Visquez testified that Haims Motors charged the "DMV E-FILE" fee for handling title and registration. (Dep at 98:24-25; 99:1-2).[3] In other words,

---

[2] The RPA and Retail Installment Sale Contract ("RISC") are attached as Exhibit "C" and "D" respectively.
[3] The evidence actually shows Haims Motors hired a third-party, TitleTec, to register and title the Infiniti as identified below.

Haims Motors charged the fee for "preparing documents" related to the Infiniti's sale and "predelivery" of the Infiniti to Mr. Cabrera, but failed to provide FDUTPA's required disclosure.

Second, in Technical Advisory number BFO06-02, Florida DMV Regional Director, Carl A. Ford, answered a question on whether a motor vehicle dealer, like Haims Motors, could include in a contract "an item that reads 'Title and Registration Fees (including private tag agency fee of $XX.XX).'"[4] Mr. Ford answered: "the Department believes that it is misleading because it gives the buyer the impression that the private tag agency fee is a statutorily mandated title or registration fee, when it is clearly no such thing." (*Id.*. Further, "this practice would be a violation of section 501.976(11), Florida Statutes, which requires that all charges or fees permitted to be added to the cash price of a motor vehicle... be 'fully disclosed' to the customer." (*Id.*) (*citing* Fla. Stat. § 501.976(11)). The "DMV E-FILE" fee falls into this category because a reasonable consumer, like Mr. Cabrera, would be misled into believing he had to pay the fee to purchase the vehicle, that Florida required he pay the fee to purchase the vehicle, and that Haims Motors paid the ***entire*** fee to the DMV, but it didn't. (Dep. at 98:24-25, 99:1-5).

Finally, Haims Motors[5] is an EFS agent, which is defined as "an entity authorized by the Department to process title and registration transactions using the Electronic Filing System as defined in Section 320.03(10), F.S." Fla. Admin. Code 15C-16.007(2)(d). Under Florida's administrative code, an EFS agent who "charges a fee to the customer for use of the electronic filing system in a title or registration transaction" must disclose the fee "separately and in a clear and conspicuous manner in the sales agreement along with the other options for titling and registration[]" and "[t]he EFS agent may not disclose or disguise this as a State or Government fee." Fla. Admin. Code 15C-16.012(5).

The evidence shows that Haims Motors never offered Mr. Cabrera any alternative options for titling and registering the Infiniti because no options are provided on the RPA or RISC. (Ex. C, D). That failure violates Florida's administrative code, which is a *per se* violation of FDUTPA. Fla. Stat. § 501.203(3)(c) (a per se violation of FDUPTA occurs

---

[4] https://www.flhsmv.gov/dmv/bulletins/2006/TA_BFO06-02.htm; a copy of the advisory is attached as Exhibit "E").

[5] Haims Motors' EFS agent ID No. is 919730.

when the conduct violates "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.").

Haims Motors didn't "fully" disclose the fee as required by FDUTPA's dealer specific statute, tacked that fee onto the amount Mr. Cabrera financed, and earned a profit from charging the fee, which violates FDUTPA's dealer specific statute, which is a *per se* violation of FDUTPA, and is generally and unfair and deceptive practice under FDUTPA. It also does not matter whether Mr. Cabrera relied on any of Haims Motors' omissions because FDUTPA does not require reliance to prove causation and damages. *Alhassid*, 2015 WL 11110557, at \*9 ("When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.") (*citing Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*, 05-61931CIV, 2006 WL 4579688, at \*2 (S.D. Fla. Feb. 6, 2006)).

4. *Haims Motors violated FDUTPA when it overcharged Mr. Cabrera for titling and registering the Infiniti and never refunded the overage.*

In a retail installment sales finance contract, a car dealer may add certain fees and charges to the "cash price" of the vehicle being financed. Fla. Stat. § 520.02(2) ("…At the seller's option, the term "cash price" may include the price of accessories, services related to the sale, service contracts, and taxes and fees for license, title, and registration of the motor vehicle.…"). However, those charges "are permitted only to the extent they are actually paid, used, or disbursed for the purposes stated." Fla. Admin. Code 69V-50.001.

Haims Motors charged Mr. Cabrera $250.00 plus the $47.95 "DMV E-FILE" fee to title and register the Infiniti. (Ex. C, D). To process the title and registration, Haims Motors hired TitleTec, a third-party tag agency. (TitleTec's records and Record Custodian Affidavit are attached as Exhibit "F"). However, the evidence shows that Haims Motors only paid $112.35 to TitleTec to process Mr. Cabrera's title and registration. (*Id.*. Mr. Visquez even admits that Haims Motors paid less than $250.00 for title and registration. (Dep. at 114:5-14). Mr. Cabrera has also never received a refund of any money from Haims Motors. (Ex. G).

Haims Motors intentionally overcharged Mr. Cabrera for titling and registering the Infiniti so it could retain a portion of that charge for profit. Haims Motors' conduct is a

15

textbook violation of FDUTPA. (Ex. E) ("A dealer can only charge the purchaser the actual amount of fees authorized by statues for title and registration transfers. Overcharging of these fees (without refunding the difference) is unlawful and could cause disciplinary action against the dealer's license."); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) ("We would not hesitate to say that an intentional overcharge of sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid …. We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA. Reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a "pass-through" port charge, but the cruise line kept the money."); *Bowe v. Pub. Storage*, 1:14-CV-21559-UU, 2014 WL 12029270, at *3 (S.D. Fla. July 2, 2014) (finding FDUTPA violated when plaintiff paid insurance charges through defendant to a third party, but defendant kept a portion of the charge.).

### D.    HAIMS VIOLATED THE FCCPA AS A MATTER OF LAW.

"The FCCPA is a laudable legislative attempt to curb what the legislature evidently found to be a series of abuses in the area of debtor-creditor relations." 10A Fla. Jur.2D Consumer § 138 (2010). *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc*, 601 F.3d at 1192 (citing Fla. Stat. § 559.552). To achieve those goals, courts must give "due consideration and great weight [] to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." *See* Fla. Stat. § 559.77(5)

The FCCPA provides: "[i]n collecting consumer debts, *no person* shall: … Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

In deciding whether Haims Motors violated the FCCPA, the Court must use the same least-sophisticated consumer standard applicable to the FDCPA. *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282 (M.D. Fla. 2017) ("Least-sophisticated-debtor standard,

which is an objective test, applies in assessing whether a particular communication or act is prohibited by Florida Consumer Collection Practices Act (FCCPA).")

The least-sophisticated consumer "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194; *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (the least sophisticated consumer is "on the low side of reasonable capacity"). The court need not determine whether the plaintiff was misled as the standard is "whether the 'least sophisticated consumer' would have been misled." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 667 (M.D. Fla. 1999).

1.   *Mr. Cabrera purchased the Infiniti for "personal, family, and household use."*

The FCCPA applies "to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes." *Agrelo v. Affinity Mgmt. Services, LLC*, 841 F.3d 944, 950 (11th Cir. 2016) (*construing* Fla. Stat. § 559.55(6)).

Haims Motors drafted and had Mr. Cabrera sign the RPA and RISC agreement to purchase and finance the Infiniti. (Ex. C, D). The RISC agreement stated that upon signing it becomes binding and Mr. Cabrera must make payments. (Ex. D). The parties' transaction triggered an obligation for Mr. Cabrera to pay money arising out of a consumer contract to purchase the Infiniti for personal, family, and household use. (Ex. G). There is no dispute of material fact that the FCCPA applies.

2.   *Haims Motors is a "person" subject to the FCCPA.*

Since 1976, courts have broadly interpreted the word "person" under the FCCPA to include corporations like Haims Motors. *See Cook v. Blazer Fin. Services, Inc.*, 332 So. 2d 677, 679 (Fla. 1st DCA 1976) ("The word 'person' as defined by s 1.01(3), Florida Statutes, includes all corporations, which, of course, includes Blazer."); *see also Schauer v. Gen. Motors Acceptance Corp.*, 819 So. 2d 809, 812 (Fla. 4th DCA 2002), *reh'g denied, clarification granted* (June 26, 2002), *reh'g denied, clarification granted* (June 26, 2002), reh'g denied, clarification granted (June 26, 2002) ("While the Act does not define the term "person," it is not restricted to debt collectors. It also mandates that no person shall engage in certain practices in collecting consumer claims whether licensed by the division or not. This court has held this

language includes all allegedly unlawful attempts at collecting consumer claims.") (citations omitted).

The RISC agreement created Mr. Cabrera's obligation to pay Haims Motors for the Infiniti. *Agrelo*, 841 F.3d at 950 ("[a]s long as the transaction creates an obligation to pay, a debt is created."). During that transaction, Haims Motors attempted to collect and collected illegitimate debts and asserted illegitimate rights to collect those debts. Therefore, the FCCPA applies.

3.   *Haims Motors violated the FCCPA because it failed to comply with FDUTPA.*

In deciding whether a defendant's conduct violates the FCCPA, courts must rely on and "refer to other statutes that establish the legitimacy of the debt and define legal rights." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1126 (11th Cir. 2004) (finding that the Higher Education Act, 20 U.S.C. §§ 1001 *et. seq.*, was such a statute as its regulations define the rights of third-party debt collectors, and debtors, when federal student loans are collected.) (citations omitted).

Other federal courts have recognized this principle where, as here, a defendant violated the FCCPA based on a defined legal right set out in a separate statute. *Brook v. Suncoast Sch., FCU*, 8:12-CV-01428-T-33, 2012 WL 6059199, at *3 (M.D. Fla. Dec. 6, 2012) (finding FCCPA violated when defendant asserted illegitimate legal right by attempting to collect a debt using unfair and deceptive practices in violation of FDUTPA.); *Ortega v. Collectors Training Inst. of Illinois, Inc.*, 09-21744-CIV, 2010 WL 11505559, at *5 (S.D. Fla. Mar. 31, 2010) (finding FCCPA violated when defendant used debt collection techniques prohibited by the FDCPA.).

a.   *Haims Motors violated the FCCPA when it charged and collected the $47.95 "DMV E-FILE" and the $699 "DEALER FEE/LOAN PROCESSING FEE" after it knowingly failed to include them in the Infiniti's advertised price.*[6]

To prove a violation of the FCCPA, "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Daniel v. Select Portfolio Servicing, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016). When construing the FCCPA, the Court must give "great weight [] to the interpretations of...the

---

[6] Mr. Cabrera's arguments under FDUTPA are incorporated in the following.

federal courts relating to the FDCPA." *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016) (citations omitted).

Haims Motors knew the Infiniti's advertised price didn't include the $699 "Dealer Fee" and the $47.95 "DMV/E-File"—which all customers must pay—yet it charged Mr. Cabrera for those fees anyway. (Dep. at 91:2-10, 92:10-25; Ex. B; Ex. C; Ex. D). With that in mind, there is no material dispute that Haims Motors had no legal right to charge and collect these "upcharges" from Mr. Cabrera after it knowingly omitted them from the Infiniti's advertised price. Fla. Stat. § 501.976(16) ("…The advertised price must include all fees or charges that the customer must pay, including freight or destination charge, dealer preparation charge, and charges for undercoating or rustproofing.…"). Based on Mr. Visquez open admission, Haims Motors asserted an illegitimate right to collect the $699 "Dealer Fee" and the $47.95 "DMV/E-File" because it knowingly omitted those fees from the Infiniti's advertised price. Fla. Stat. § 559.72(9).

> b.      *Haims Motors violated the FCCPA when it knowingly failed to refund the amount it overcharged Mr. Cabrera for titling and registering the Infiniti and failing to "fully" disclose the $47.95 "DMV E-FILE" fee.*

Haims Motors knew it paid $112.35 to have TitleTec register and title the Infiniti. (Ex. F). Mr. Visquez even testified in deposition that discovery showed Haims Motors paid less than $250.00 to title and register the Infiniti. (Dep. at 114:5-8). Further, Haims Motors still has refunded no amount to Mr. Cabrera for any overcharge. (Ex. G). For that reason, Haims Motors knowingly collected and retained an illegitimate debt from Mr. Cabrera it had no legal right to keep, which violates the FCCPA. Fla. Stat. § 559.72(9); (Ex. E) ("A dealer can only charge the purchaser the actual amount of fees authorized by statues for title and registration transfers. Overcharging of these fees (without refunding the difference) is unlawful and could cause disciplinary action against the dealer's license.")

There is no dispute that Haims Motors did not associate FDUTPA's required disclosure with the "DMV E-FILE" fee (Ex. C; Dep. at 98:16-25, 99:11-14); that it passed the "DMV E-FILE" fee off as a state/government fee; that Haims did not pay that fee to any DMV (Dep. at 99:3-5); and that Haims Motors never offered Mr. Cabrera any other options for titling and registering the Infiniti. (Ex. C, Ex. D). These disclosures were a "pre-requisite" to Haims Motors attaining any legal right to charge the $47.95 "DMV E-FILE" fee.

Accordingly, Haims Motors knew it had no legal right to charge and collect the $47.95 "DMV E-FILE" fee from Mr. Cabrera.

4.  *Haims Motors was sued in 2015 for this exact same conduct giving it actual knowledge of its wrongdoing.*

Under the Federal Rules of Evidence, evidence of a "crime wrong or other act" can prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Evidence of this type is admissible when "(1) it is relevant to an issue other than the defendant's character; (2) sufficient proof exists for a jury to find by a preponderance of the evidence that the defendant committed the acts in question; and (3) the probative value of the evidence is not substantially outweighed by undue prejudice under Federal Rule of Evidence 403." *United States v. Baptiste*, 618 Fed. Appx. 593, 596 (11th Cir. 2015)

In October 2015, plaintiff Zachary Staton sued Haims Motors alleging violations of the FCCPA and FDUTPA, among other causes of action. (Defendant's Supplemental Responses to Plaintiff's First Set of Interrogatories No. 12, attached as Exhibit "I"); (a copy of the Complaint ("Compl.") is attached as Exhibit "J").

Like Mr. Cabrera, Mr. Staton alleged that Haims Motors violated FDUTPA's dealer statute because it failed to "fully" disclose the fee and failed to offer alternative options for titling and registration, which was a *per se* violation of FDUTPA. (Compl. ¶¶ 25-29; ¶ 35; ¶¶ 143-160). In turn, Haims Motors violated the FCCPA for charging him the $47.95 "DMV E-FILE" fee because of its failure to comply with FDUTPA. (*Id.* ¶¶ 173-176). The parties ultimately settled the case at mediation. However, it seems Haims Motors refused to change its business practices.

Mr. Staton's lawsuit is certainly probative to prove that Haims Motors knew that it had no legal right to collect the "DMV E-FILE" fee unless it complied with FDUTPA's disclosure requirements. Even during deposition, Mr. Visquez testified that Haims Motors was updating its new employee handbook because of "New Laws." (Dep. at 56:3-25; 57:1-25; 58:1-24). Haims Motors violated the FCCPA, knowingly.

### E.     MR. CABRERA IS ENTITLED TO SUMMARY JUDGMENT ON HAIMS MOTORS' AFFIRMATIVE DEFENSES.

Haims Motors' alleged two affirmative defenses: (i) failure to set forth facts sufficient to state a claim; and (ii) "bona-fide error defense pursuant to 15 U.S.C. § 1692k". (ECF No. 9, pg. 7). First, as argued above, Mr. Cabrera has stated a claim, and there is no material dispute of fact that he is entitled to summary judgment as alleged herein. Second, Mr. Cabrera does not seek relief under the Fair Debt Collection Practices Act, which Haims Motors' second affirmative defense is solely based on. Accordingly, the Court should enter summary judgment for Mr. Cabrera on Haims Motors' affirmative defenses.

## IV.     CONCLUSION

Mr. Cabrera didn't receive the disclosures the Florida legislature declared he was entitled to receive. In turn, that caused Mr. Cabrera to pay fees and incur excessive finance charges that he otherwise would have never incurred, and that Haims Motors was never entitled to collect. Mr. Cabrera respectfully requests this Court grant his Motion for Summary Judgment.

Wherefore, Mr. Cabrera respectfully requests the Court enter summary judgment in favor of Mr. Cabrera; award Mr. Cabrera his attorney's fees and costs; and grant any other relief the Court deems appropriate.

Dated:  October 30, 2017                           Respectfully submitted,

                                                   /s/ Darren R. Newhart
                                                   Darren R. Newhart, Esq.
                                                   Florida Bar No.: 0115546
                                                   E-mail: darren@cloorg.com
                                                   /s/ J. Dennis Card Jr.
                                                   J. Dennis Card, Jr., Esq.
                                                   Florida Bar No.: 0487473
                                                   E-mail:DCard@Consumerlaworg.com
                                                   Consumer Law Organization, P.A.
                                                   721 US Highway 1, Suite 201
                                                   North Palm Beach, Florida 33408
                                                   Telephone: (561) 822-3446
                                                   Facsimile: (305) 574-0132
                                                   *Attorneys for Plaintif*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2017, the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

s/ Darren R. Newhart
Darren R. Newhart

## SERVICE LIST

All counsel of record.